## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BROADCAST MUSIC, INC.,
et al,

      Plaintiffs,


vs.                                    CASE NO. 8:11-cv-2056-T-17TBM

EVIE'S TAVERN ELLENTON, INC.,
and MICHAEL EVANOFF,

      Defendants.

_____/

### ORDER

    This cause is before the Court on the parties' cross motions for summary judgment, and

the Court has considered the following: (1) Defendants' Verified Motion for Summary Judgment

(Dkt. 25); (2) Defendants' Memorandum of Law in Support of Defendants' Motion for Summary

Judgment (Dkt. 26); (3) Plaintiffs' Opposition to Defendants' Motion for Summary Judgment &

Supporting Memorandum of Law (Dkt. 35); (4) Defendants' Notice of Filing Affidavit in

Opposition to BMI's Motion for Summary Judgment and in Support of Defendants' Motion for

Summary Judgment (Dkt. 36); (5) Defendants' Supplemental Memorandum of Law in Support of

Defendants' Motion for Summary Judgement (Dkt. 37); (6) Plaintiffs' Motion for Summary

Judgment and Memorandum in Support (Dkt. 28); and (7) Plaintiffs' Reply to Defendants'

Opposition and Supporting Memorandum of Law (Dkt. 40).  On September 19, 2013, the Court

held a hearing to specifically address the arguments raised by defendants regarding the chain of

title of the musical compositions at issue.  At the hearing, the Court directed the parties to file

supplemental memoranda to address the Court's specific concerns, and the parties complied.  *See*

(Dkts. 56, 57).  Having carefully considered the entire record, the Court **DENIES** Defendants'

Verified Motion for Summary Judgment (Dkt. 25) and **GRANTS IN PART and DENIES IN**

**PART** Plaintiffs' Motion for Summary Judgment and Memorandum in Support (Dkt. 28).

## BACKGROUND

Plaintiff Broadcast Music, Inc. ("BMI") is a "performing rights society" that enters into

nonexclusive licenses with the copyright owners to publically perform the musical compositions.

The remaining plaintiffs in the extant case are the copyright owners with whom BMI contracted.[1]

Through various agreements, many of which are being challenged by the defendants, BMI has

acquired the nonexclusive right to publically perform over 7.5 million musical compositions so

that it may, in turn, contract with third parties, i.e., broadcasters, music halls, bar owners,

restaurants, to perform these musical compositions at their establishments.  After deducting

operating expenses and reserves, BMI distributes the remaining revenue to its affiliated

publishers and composers.  This licensing arrangement has been recognized as the most practical

means to enforce the public performance rights of a copyright owner.

BMI brought this action against a tavern and its owner for copyright infringement of

several copyrighted works.  BMI alleges that Evie's Tavern Ellenton, Inc. ("Evie's Tavern"),

owned and operated by Michael Evanoff,[2] performed copyrighted works without a license and

despite a flurry of cease and desist letters and phone calls.  Specifically, the complaint alleges six

(6) claims of copyright infringement for six different copyrighted musical compositions: (1)

---

[1] For the purpose of this order, the Court will often refer to all plaintiffs collectively as
"BMI," unless otherwise noted.

[2] For the purpose of this order, the Court will refer to both defendants as Evie's Tavern.

"Good Times a/k/a Rappers Delight;" (2) "Oh, Pretty Woman a/k/a Pretty Woman;" (3) "You

Dropped a Bomb on Me;" (4) "Kryptonite;" (5) "Angry All The Time;" and (6) "Bring Me to

Life." *See* Dkt. 28-1. In response to the motion for summary judgment, Evie's Tavern

principally argues that BMI failed to establish proper chain of title and/or proof of ownership

with respect to certain of the copyrighted works at issue.[3]

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted if

the pleadings, depositions, answers to interrogatories and admissions on file, together with

affidavits, if any, show that there is no genuine issue of material fact and that the moving party is

entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

(1986). The moving party bears the initial burden of stating the basis for its motion and

identifying those portions of the record demonstrating the absence of genuine issues of material

fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). That burden can be discharged if

the moving party can show the Court that there is "an absence of evidence to support the

nonmoving party's case." *Id.* at 323, 325. When the moving party has met this initial burden, the

nonmoving party must then designate specific facts showing that there exists some genuine issue

of material fact in order to defeat summary judgment. *Id.* at 324.

---

[3] It is not entirely clear whether Evie's Tavern is challenging the chain of title of all six musical compositions referenced in the complaint. *See* (Dkt. 26, ¶ 3) ("BMI has not established a prima facie case for who actually the copyright for the 5 songs allegedly infringed upon . . . "); (Dkt. 40) ("Defendants do not challenge the chain of title with respect to Title 5-Kryptonite."). In any event, the Court will independently analyze the chain of title with respect to all six musical compositions. At the hearing, and buried in the briefing, counsel for defendants also made reference to derivative works of the musical compositions at issue. Put simply, the defendants' reliance on that line of reasoning is grossly misplaced. Equally unavailing is defendants' unsupported claim that they had a license to play the songs based on existing licenses between the DJ and another publishing affiliate.

3

Issues of fact are "genuine" only if a reasonable jury, considering the evidence presented, could find for the nonmoving party. *Anderson*, 477 U.S. at 249. Material facts are those that will affect the outcome of the trial under governing law. *Id.* at 248; *Hickson Corp. v. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). In determining whether a material issue of fact exists, the court must consider all evidence in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983). If the determination of the case hinges on which competing version of the facts or events is true, the case should be submitted to the trier of fact and the motion for summary judgment denied. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987). The weighing of evidence and the consideration of the credibility thereof are issues of fact to be determined by the jury at trial. *See Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1299 (11th Cir. 1983).

## DISCUSSION

### A.

Generally, to establish a prima facie case for copyright infringement, a plaintiff must show that: (1) it owns a valid copyright and (2) the defendant copied the work. *See Peter Letterese & Assoc., Inc. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1300 (11th Cir. 2008). In a lawsuit alleging the unauthorized public performance of a copyrighted musical composition, the plaintiff must show: (1) the originality and authorship of the compositions involved; (2) compliance with all formalities required to secure a copyright under Title 17, United States Code; (3) that plaintiffs are the proprietors of the copyrights of the compositions involved in the action; (4) that the compositions were performed publicly by the defendant; and (5) that the defendant did not receive permission from any of the plaintiffs or their representatives for such performance. *See Broadcast Music, Inc. v. Bisla and Bisla*, LLC, 2012

4

WL 5387890, at *1-2 (M.D. Fla. Nov. 2, 2012) (citing *Milk Money Music v. Oakland Park Entm't Corp.*, 2009 WL 4800272, at *2 (S.D. Fla. Dec. 11, 2009)).  Because the first two prongs are undisputed,[4] and the challenge to the fourth and fifth prongs is not supported by the undisputed record evidence,[5] this case will rest on the third prong.  The question the Court must resolve is whether there exists a genuine issue of material fact with respect to the chain of title of each of the six musical compositions.

As an initial matter, and before reaching the merits of the dispute, the Court will pause to note that the documents submitted by the defendants that purport to be declarations are woefully inadequate.  The Court will, therefore, strike all statements that are not *facts* based on Mr. Evanoff's personal knowledge.  In effect, that leaves only portions of paragraphs 15 and 16 of the Defendants' Verified Motion for Summary Judgment and portions of paragraphs 29 through 34 of the Affidavit of Defendants in Opposition to BMI's Motion for Summary Judgment and in Support of Defendants' Motion for Summary Judgment.  All other paragraphs are stricken, and the Court will consider the legal arguments contained within them to the extent they have merit. *See, e.g., Hetherington v. Wal-Mart, Inc.*, 511 Fed App'x 909, 911-12 (11th Cir. 2013) (affirming

---

[4] The certificate of copyright registration for each of the six titles is attached to the declaration of Michelle Zarr, Esq. *See* (Dkt. 28-1).  The presumed validity of the copyrights is unrebutted on this record. *See Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999).

[5] Each of the six titles was publicly performed at Evie's Tavern. *See* (Dkt. 28-1, ¶¶ 21, 42, 57, 69, 75, 85); *see also* (Dkt. 28-17, ¶ 13 and Exhibit "D" thereto).  BMI also filed with the Court a compact disc containing the public performance of the musical compositions. *See* (Dkt. 28, Exhibit E).  There is no evidence in the record to the contrary, and the Court is not inclined to give any weight to the aporetical conclusions contained in the affidavit submitted by co-defendant Michael Evanoff. *See* (Dkt. 25, ¶ 3) ("As readily disclosed, of the first 15 songs played by a DJ, the investigator could not identify 9 by either title, artist or both.  That is hardly a competent investigation."); *see, e.g., Bennett v. Chitwood*, 2013 WL 2257124, at *3 (11th Cir. May 23, 2013) (refusing to credit the "estimate" or form of "belief" as sufficient to raise a genuine issue of material fact to defeat summary judgment).  Moreover, as discussed below the Court is striking that particular paragraph in the affidavit.

the magistrate judge's order to strike portions of a declaration that were legal conclusions and statements not within the declarant's personal knowledge).

### 1. "Good Times a/k/a Rapper's Delight"

Both the original work–"Good Times"– and the derivative work–"Rappers Delight"– are registered with the copyright office, *see* (Dkt. 28-1, ¶ 7), and Michelle Zarr details the chain of title of the works from the original copyright claimant to the current copyright owners of the registered musical composition titled "Good Times a/k/a Rapper's Delight." *See* (Dkt. 28-1, ¶¶ 7-20).

In an apparent effort to avoid liability for infringement, Evie's Tavern, through an affidavit and a verified motion submitted by the individual defendant, asserts the existence of several deficiencies in the chain of title for this musical composition. *See* (Dkts. 25, 36). The undisputed record evidence shows that the named plaintiffs were properly assigned the copyrights in this case. The best the Court can tell, Evie's Tavern is arguing that there is a lack of evidence that the original assignee, Chic Music, Inc., subsequently assigned the copyright to any of the plaintiffs in this case  *See* (Dkt. 36, ¶¶ 3-8). To the contrary, Chic Music, Inc., assigned the rights in this title to Bernard Edwards and Nile Rogers, each receiving a 50% interest. A subsequent agreement ultimately assigns Nile Rogers' interest to Tommy Jymi, Inc., and then to Sony Songs, Inc. In 1995, Sony Songs, Inc., assigned its entire 50% interest to this title (and others) to Sony/ATV Songs, LLC, one of the named plaintiffs in this case. The other 50% interest, through a series of reversions and assignments, following the death of Bernard Edwards, was ultimately assigned to the Bernard Edwards Company, LLC, also a named plaintiff in this case. Although there is certainly a tangled web of assignments between the original copyright holder and its chosen affiliate publisher, the Court finds, on this record, that BMI is the

publisher affiliate authorized to license the right to publically perform the musical composition at the time of the infringement.

Moreover, when (as in this case) there is no dispute between the copyright owner and the transferee about the status of the copyright, "it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement." *See Imperial Residential Design, Inc. v. Palms Development Group, Inc.*, 70 F.3d 96, 99 (11th Cir. 1995); *see, e.g., Oceans of Images Photography, Inc. v. Foster and Smith, Inc.*, 2012 WL 5878092, at \*5 (M.D. Fla. Nov. 21, 2012). Accordingly, summary judgment is appropriate as to "Good Times a/k/a Rapper's Delight."

## 2. "Oh, Pretty Woman a/k/a Pretty Woman"

"Oh, Pretty Woman a/k/a Pretty Woman" was registered with the copyright office in 1964 by Acuff-Rose Publications, Inc. *See* (Dkt. 28-1, ¶¶ 24-25). Acuff-Rose Publications, Inc., transferred ownership to Acuff-Rose Opryland Music, Inc., which later changed its name to Acuff-Rose Music, Inc. Upon Roy Orbison's death in 1988, the ownership of this title reverted to his estate, transferring the ownership rights to his four heirs—Barbara Orbison, Wesley K. Orbison, Alexander O. Orbison and Roy Orbison, Jr. Wesley Orbison assigned his 25% interest to Acuff-Rose Music, Inc., which later assigned its entire catalog of songs (including this one) to Sony/ATV Songs, LLC, a named plaintiff in this lawsuit. The remaining three heirs are also named plaintiffs in this case, each of whom also entered into a publisher affiliate agreement with BMI. The Court is unpersuaded by the legal arguments couched as "facts" in the opposing declarations, and finds that the undisputed record evidence properly shows the ownership rights belonging to the BMI plaintiffs in this case. *See Imperial Residential Design*, 70 F.3d at 99; *see,*

*e.g., Images Photography*, 2012 WL 5878092, at *5.  Accordingly, summary judgment is appropriate as to "Oh, Pretty Woman a/k/a Pretty Woman."

### 3. "You Dropped a Bomb on Me"

In 1982, Total Experience Music Publishing Co. registered the musical composition titled "You Dropped a Bomb on Me."  Through a series of transactions adequately documented in the record, ownership in this title passed through several entities and ended up with Minder Music, Ltd.  Although BMI submitted evidence of its publisher affiliate agreement with John Fogarty d/b/a Taking Care of Business c/o Minder Ltd, as BMI concedes in its supplemental memorandum, "there is a genuine issue of material fact that remains for trial as to whether John Fogarty, the principal of Minder Music, Ltd. also assigned or licensed [this title] to himself d/b/a Taking Care of Business."  (Dkt. 57, p. 7).  Accordingly, summary judgment is not appropriate as to "You Dropped a Bomb on Me."

### 4. "Kryptonite"

In 2000, Escatawpa Songs obtained a copyright registration for the musical composition titled "Kryptonite."  Escatawpa Songs is a partnership operated by Bradley Kirk Arnold, Robert Todd Harrell, Matthew Darrick Roberts, and Christopher Lee Henerson.  The latter two partners ultimately assigned their ownership rights to Songs of Universal, Inc., which is a plaintiff in this action along with the partnership itself.  Additionally, the partnership and Songs of Universal, Inc., each entered into an affiliate agreement with BMI.   The Court is unpersuaded by defendants' arguments to the contrary.  *See Imperial Residential Design*, 70 F.3d at 99; *see, e.g., Images Photography*, 2012 WL 5878092, at *5.  Accordingly, summary judgment is appropriate as to "Kryptonite."

8

**5. "Angry All The Time"**

In 1999, Bruce Robison Music and Tiltawhirl Music registered the musical composition "Angry All the Time." In 1999 and 2001, BMI entered into a publisher affiliate agreement with Bruce Robison d/b/a Bruce Robison Music, a plaintiff in this case. In 1997, BMI entered into a publisher affiliate agreement with Carnival Music Co. d/b/a Tiltawhirl Music, also a plaintiff in this case. The Court is unpersuaded by defendants' arguments to the contrary. *See Imperial Residential Design*, 70 F.3d at 99; *see, e.g., Images Photography*, 2012 WL 5878092, at *5. Accordingly, summary judgment is appropriate as to "Angry All the Time."

**6. "Bring Me to Life"**

In May 2003, Zombies Ate My Publishing, Forthefallen Publishing and Dwight Frye Music, Inc., obtained a copyright registration in the musical composition titled "Bring Me to Life." Amy Lee and Ben Moody d/b/a Zombies Ate My Publishing, and David Hodges d/b/a Forthefallen Publishing, both original copyright claimants, are plaintiffs in this case. Dwight Frye Music, Inc. Assigned its ownership interest in this title to First State Media Group, Ltd. The other plaintiff, to complete the chain of title, is State One Music America, LLC d/b/a State One Music America, which is First State Media Group, Ltd.'s exclusive U.S. licensee of all works in the Dwight Frye catalog. While there is a distinction between State One Music, LLC (the named licensee from First State Media Group, Ltd.) and State One Music America, LLC—the addition of the work "America"—it is a distinction without a meaningful difference because the other two co-owners of the copyright could maintain this action even in the absence of the additional co-owner. *See, e.g., Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007). The Court is unpersuaded by defendants' remaining arguments. *See Imperial Residential Design*, 70 F.3d at

99; *see, e.g., Images Photography*, 2012 WL 5878092, at *5. Accordingly, summary judgment is appropriate as to "Bring Me to Life."

The Court, therefore, grants summary judgment in favor of BMI as to liability for copyright infringement for "Good Times a/k/a Rappers Delight," "Oh, Pretty Woman a/k/a Pretty Woman," "Kryptonite," "Angry All The Time," and "Bring Me to Life." Summary judgment is denied with respect to "You Dropped a Bomb on Me."[6]

### B.

The Copyright Act permits the aggrieved party to either elect actual or statutory damages. 17 U.S.C. § 504(c)(1). If a copyright owner elects statutory damages in lieu of actual damages and profits, the Court may, in its discretion, award in the amount of "not less than $750 or more than $30,000 as the court considers just," per act of infringement. *Id.*; *see also F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 231-32 (1952). "A plaintiff may elect statutory damages whether there is adequate evidence of actual damages to the copyright owner or profits gained by the infringer." *Nintendo of America, Inc. v. Ketchum*, 830 F.Supp. 1443, 1445 (M.D. Fla. 1993) (citing *Cable/Home Comm. Corp. v. Network Prod., Inc.*, 902 F.2d 829, 850 (11th Cir. 1990)). The Court should, in determining whether to award statutory damages, consider several factors, "including the expenses saved and profits reaped by [the] infringer, revenues lost by copyright holder as a result of infringement, and infringer's state of mind, whether willful,

---

[6] None of the affirmative defenses raised in the pleadings stands in the way of entering judgment in BMI's favor. BMI addresses the legal inadequacy of each in its motion for summary judgment, and the Court agrees. *See* (Dkt. 28, pp. 16-19). Ostensibly the defendants do not disagree, as they do not, in any of the several papers filed in connection with the pending summary judgment motion address the legal arguments raised by BMI. The only matter the defendants seems to contest is the willfulness of the infringement. As discussed below, the record evidence is undisputed that the defendants' conduct was certainly not innocent and likely willful, although the Court is not making that specific finding in this order.

knowing or innocent." *Id.* Of course, the Court must remain mindful that the purpose of statutory damages is to discourage wrongful conduct and enforce the statutory protections afforded by the Copyright Act. *See F.W. Woolworth*, 344 U.S. at 233; *Microsoft Corp. v. Raven Tech., Inc.*, 2007 WL 438803, at *4 (M.D. Fla. Feb. 8, 2007).

BMI seeks $3,000 for each infringement for a total of $18,000. (Dkt. 28, p. 14). BMI relies on the declaration submitted by Lawrence Stevens, an assistant vice president for BMI, that details the communications had with Mr. Evanoff and his staff. (Dkt. 28-17). As outlined in the Stevens declaration, it is undisputed that BMI expended considerable effort attempting to bring these defendants into compliance. It is inconceivable, in light of the flurry of communications sent by BMI, that Mr. Evanoff was unaware of the legal implications of his actions. (Dkt. 25, ¶¶ 15, 16). Indeed, Mr. Evanoff even concedes that he did receive "perhaps one or two" of the dozens of letters sent by BMI informing him of his conduct, yet he chose to do nothing to educate himself of the implications of violating the Copyright Act. Although the record supports a finding that Mr. Evanoff most likely knew more than he claims, the Court need not (nor can it on summary judgment) go that far, because it is undisputed that Mr. Evanoff knew prior to filing this lawsuit that he was infringing several copyrights and he chose not to act.

Moreover, the amount sought in statutory damages equals approximately three times the licensing fees defendants would had paid over the last 4 years had they licensed the copyrights. Given the facts and circumstances of this case, the Court finds that an award in the amount of $3,390.66 per infringement of the five (5) titles for which summary judgment is granted, which totals $16,953.30 (three times the lost licensing fees of $5,651.10), will adequately serve its statutory purpose and discourage wrongful conduct. *See, e.g., M.L.E. Music Sony/ATV Tunes, LLC v. Julie Ann's, Inc.*, 2008 WL 2358979, at *5 (M.D. Fla. June 9, 2008).

11

C.

Having decided liability and the amount of damages, the next natural step is to determine

whether both defendants are on the hook.  Clearly, Evie's Tavern of Ellenton, Inc., is liable for

the infringing acts committed at the establishment.  *See, e.g., Broadcast Music, Inc. v. Niro's*

*Palace, Inc.*, 619 F. Supp. 958, 961 (N.D. Ill. 1985).  And "[i]t is well established that a

corporate officer will be liable as a joint tortfeasor with the corporation in a copyright

infringement case where the officer was the dominant influence in the corporation, and

determined the policies which resulted in the infringement." *Sailor Music v. Mai Kai of Concord,*

*Inc.*, 640 F.Supp. 629, 633 (D.C.N.H. 1986); *see, e.g., M.L.E. Music*, 2008 WL 2358979, at *5

(granting summary judgment against individual restaurant owner); *Broadcast Music, Inc. v.*

*Aartie Restaurant Mngt., Inc.*, 1993 WL 106894 (M.D. Fla. Jan. 13, 1993) (same).  Here, it is

undisputed that Mr. Evanoff was the manager and 100% owner of Evie's Tavern.  (Dkt. 28-23, p.

2).  As owner and manager, Mr. Evanoff had the ability to oversee all of the employees that

worked at and operated Evie's Tavern, and he certainly had a direct financial interest in the

musical performances. *See id.* at pp. 4-5.  Accordingly, Evie's Tavern and Mr. Evanoff are

jointly and severally liable for the damages and costs of the copyright infringement.

D.

The Court finds that plaintiffs are entitled to an award of fees and costs for bringing this

action.  The Copyright Act affords district courts the discretion to award costs and attorneys' fees

to the prevailing party in an infringement action. 17 U.S.C. § 505; *see Hermosilla v. Coca-Cola*

*Co.*, 492 Fed App'x 73, 75 (11th Cir. 2012).  Recovery of fees is not automatic, but rather

appropriately awarded in those cases that are "faithful to the purposes of the Copyright Act." *See*

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517, at n. 19 (1994).  To that end, it is appropriate to consider

the frivolousness, motivation, objective unreasonableness, the need to compensate the prevailing

party, along with the need to deter the conduct of the losing party. *See Dream Custom Homes,*

*Inc. v. Modern Day Const., Inc.*, 2013 WL 393916, at * 2 (M.D. Fla. Jan. 8, 2013); *Baby*

*Buddies, Inc. v. Toys R Us, Inc.*, 2011 WL 4382450, at *2 (M.D. Fla. Aug. 9, 2011).  Based on

the Court's review of the record, and because the infringement in this action was admittedly done

with knowledge, and because it resulted in forcing BMI to take legal action in what has been a

hotly contested fight to the finish, the Court finds that an award of attorneys' fees and costs is

appropriate.  Based on the extraordinary effort expended by BMI prior to filing this lawsuit, it

seems plausible that this matter could have been resolved for a relatively small amount of money.

Instead, these defendants hoped to avoid compliance with the copyright laws by mounting a

defense that ultimately proved futile.  The Court will award fees and costs, and the parties are

directed to meet and confer *in good faith* to determine the amount reasonable under the

circumstances of this case.  If the parties cannot reach such an agreement by October 21, 2013,

then BMI may file a motion with supporting documentation as to the amount of fees and costs it

seeks to recover.

## E.

The next question is whether it is appropriate to issue a permanent injunction against the

defendants.  There is no question that the entry of a permanent injunction seems entirely

appropriate in this case.  In fact, it has been quite customary in these types of cases to

permanently enjoin further acts of infringement simply as a matter of course.  But in light of the

Supreme Court's admonition in *eBay*, that all four factors must be given thoughtful consideration

prior to issuing permanent injunction, the Court is not willing to simply "rubber stamp" BMI's

request.  *See eBay, Inc. v. MercExchange*, LLC, 547 U.S. 388 (2006); *see generally AWGI, LLC*

*v. Team Smart Move, LLC*, 2013 WL 1181450, at *6 (M.D. Fla. Mar. 14, 2013).  A finding of liability of copyright infringement does not conclusively establish the remaining principles of equity that form the basis for injunctive relief.  Accordingly, BMI's request for permanent injunctive relief is denied *without prejudice*.  The parties are again instructed to meet and confer *in good faith* to determine whether they can agree to a stipulated injunction.  If unable to do so, then BMI may file a motion for permanent injunctive relief, addressing all of the equitable factors the Court must consider.

In light of the above order, BMI is also instructed to confirm within seven (7) days that it is withdrawing its claim of infringement of "You Dropped a Bomb on Me."  Accordingly, it is

**ORDERED** that Defendants' Verified Motion for Summary Judgment (Dkt. 25) is **DENIED** and Plaintiffs' Motion for Summary Judgment and Memorandum in Support (Dkt. 28) is **GRANTED IN PART and DENIED IN PART**.

**DONE AND ORDERED** in Chambers in Tampa, Florida this ___ day of September, 2013.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies furnished to: All Counsel of Record

14